KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (SBN 38723)
　hweitzman@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
　jsteinsapir@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiffs MJJ Productions, Inc., Optimum Productions, Inc., New Horizons Trust III, LLC (d/b/a MIJAC Music), The Michael Jackson Company, LLC, and MJJ Ventures, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MJJ PRODUCTIONS, INC., a California corporation, OPTIMUM PRODUCTIONS, INC., a California corporation, NEW HORIZONS TRUST III, LLC, a Delaware limited liability company, d/b/a MIJAC MUSIC, THE MICHAEL JACKSON COMPANY, LLC, a Delaware limited liability company, and MJJ VENTURES, INC., a California corporation,<br><br>　　Plaintiffs,<br><br>　　vs.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation, ABC, INC., a Delaware corporation, and DOES 1 through 10, inclusive.<br><br>　　Defendants. | Case No. 2:18-cv-18-4761<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**JURISDICTION AND VENUE**

1. This is a copyright infringement case by the Estate of Michael Jackson, through various companies, against The Walt Disney Company and ABC, Inc.

2. The action arises under the United States Copyright Act of 1976, 17 U.S.C. §§ 101, et. seq. This court has original and exclusive jurisdiction pursuant to 28 U.S.C. § 1338(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(a), because defendants and their agents reside in, or may be found in, this district.

**FACTUAL ALLEGATIONS**

4. The Walt Disney Company is one of the world's largest media conglomerates. Its affiliates include Walt Disney Pictures, Pixar, Lucasfilm, Marvel Entertainment, ESPN, and ABC, Inc. (collectively "Disney"). Disney controls some of the most beloved characters and stories in modern culture, such as: Mickey Mouse, Donald Duck, and friends; classic animated films like *Peter Pan*, *Cinderella*, *Pinocchio*, and others; modern classics like *Toy Story*, *Finding Nemo*, *The Incredibles*, and other Pixar movies; the *Star Wars* franchise; Spiderman, the X-Men, and other characters and stories from the world of Marvel Comics; and ESPN's popular *30 for 30* documentary series.

5. Disney's media business depends on its intellectual property and, more specifically, the copyrights it holds in its well-known characters, motion pictures, music, and the like. Disney has never been shy about protecting its intellectual property. Indeed, its zeal to protect its own intellectual property from infringements, real or imagined, often knows no bounds.

   a. Disney has threatened to sue independent childcare centers for having pictures of Mickey Mouse and Donald Duck on their walls, forcing them to remove all pictures of Mickey or Donald—and other anthropomorphized mice or ducks—rather than face ruinous litigation from one of the world's largest corporations.

   b. Disney once sued a couple on public assistance for $1 million when they appeared at children's parties dressed as an orange tiger and a blue donkey. Apparently, these costumes cut too close to Tigger and Eeyore for Disney's tastes.

   c. Disney takes a very narrow view of copyright law's "fair use" doctrine. For example, just a few years ago, it sent DMCA takedown notices to Twitter, Facebook, and other websites and webhosts, when consumers posted pictures of new *Star Wars* toys that the consumers had legally purchased. Apparently, Disney claimed that simple amateur photographs of *Star Wars* characters in toy form infringed Disney's copyrights in the characters and were not a fair use.

  6. In light of all of this, the plaintiffs in this case—various companies that comprise a part of the Estate of Michael Jackson (collectively, "the Estate")—were genuinely shocked when they watched Disney's prime-time two-hour television program, *The Last Days of Michael Jackson*, which aired in prime time on ABC on Thursday, March 24, 2018.

  7. Although titled *The Last Days of Michael Jackson*, the program did not focus on Michael Jackson's last days. Rather, it was simply a mediocre look back at Michael Jackson's life and entertainment career. A *Rolling Stone* review described the program as "offer[ing] little in the way of new revelations or reporting and at times seems heavy on armchair psychoanalysis and unsupported conjecture." The magazine was being too generous. The program contained *nothing* "in the way of new revelations or reporting."

  8. Unable to make a compelling presentation about Michael Jackson on its own, Disney decided to exploit the Jackson Estate's intellectual property without permission or obtaining a license for its use. After all, there there is always a healthy audience for Michael Jackson's timeless music, his ground-breaking videos, and footage of his unforgettable live performances. Why not just use Michael Jackson's

3
COMPLAINT FOR COPYRIGHT INFRINGEMENT

works if one can get advertisers to buy time on the program? But in order to use these valuable assets, a license must be obtained for it by the Estate.

9. Like Disney, the lifeblood of the Estate's business is its intellectual property. Yet for some reason, Disney decided it could just use the Estate's most valuable intellectual property for free. Apparently, Disney's passion for the copyright laws disappears when it doesn't involve its own intellectual property and it sees an opportunity to profit off of someone else's intellectual property without permission or payment.

10. The extent of Disney's use of the Estate's intellectual property in *The Last Days of Michael Jackson* is truly astounding. The program used dozens of copyrighted works owned by the Estate, but obtained no license. In fact, Disney-owned ABC never even approached the Estate to seek a license or let the Estate know what it was doing.

11. In total, the program used at least thirty different copyrighted works owned by the Estate without permission, including but not limited to the following:

    a. Substantial portions of some of Michael Jackson's most famous music without permission, including Michael's recordings of songs such as *Billie Jean*, *Beat It, Don't Stop 'Til You Get Enough*, *The Girl is Mine*, and *Leave Me Alone*. Disney used this music without obtaining required permissions from *both* the owners of the sound recordings (the Estate) *and* the owner of the musical compositions (the Estate for most songs, and third parties for a few others).

    b. Extensive parts of Michael Jackson's copyrighted music videos—or "short films" as Michael called them—such as *Michael Jackson's Thriller*, *Billie Jean*, *Black or White*, and *Childhood*. The program used, without permission, substantial portions of well over a dozen Michael Jackson music videos without permission from the Estate.

  c. Considerable parts of Michael Jackson's copyrighted video productions, including: *The Making of Thriller* (which has *only* been released on VHS and has never been released on DVD or any other digital medium) and *Dangerous: The Short Films*.

  d. Concert footage owned by the Estate such as the productions *Michael Jackson: Live at Wembley* and *Michael Jackson: Live in Bucharest*, along with extensive portions of Michael performing with his brothers on the *Triumph* tour (the copyrights to which are owned by the Estate).

  e. Significant parts of the Estate's critically-acclaimed film, *This Is It*, the most successful music documentary in history, which was released shortly after Michael's tragic death; and the Estate's 2016 Spike Lee directed documentary *Michael Jackson's Journey from Motown to Off the Wall*. Of course, when the Estate wanted to use clips of Sylvia Chase's 1980 interview of Michael Jackson from ABC's 20/20 for that same documentary, *Michael Jackson's Journey from Motown to Off the Wall*, the Estate sought, obtained, and paid for a license from Disney itself.

  f. Copyrighted footage owned by the Estate that the Estate has never commercially exploited. In particular, the Disney program included footage of one of Michael Jackson's children's heartbreaking remarks about her father at the July 7, 2009 memorial service for Michael Jackson at Staples Center. The Estate has never licensed this footage for commercial use. Yet even after being advised that the Estate owned the copyright in it, Disney cynically used it anyway.

12. The Estate only learned that Disney intended to use *any* of its copyrighted works in the program itself two days before it aired. On March 21, 2018, the Estate contacted The Walt Disney Company's General Counsel when the Estate was informed that the trailer for the special was using certain copyrighted images owned by the Estate. The next day, a Disney attorney responded to the

5
COMPLAINT FOR COPYRIGHT INFRINGEMENT

1 Estate and advised that Disney would remove the copyrighted images "as a
2 courtesy."

3     13. When the Estate asked the Disney attorney if any other copyrighted
4 property belonging to the Estate was being used in the program itself, the Disney
5 attorney replied that some small portions of copyrighted music were being used.

6     14. When asked *which particular copyrighted music* was being used, the
7 Disney attorney unequivocally refused to answer. Obviously, if Disney thought it
8 was not doing anything wrong, the Disney attorney would have not have refused to
9 tell the Estate what they were doing. The Disney attorney said that its uses were all a
10 "fair use" because the program was a "documentary." When pressed, the Disney
11 attorney kept falling back on the fact that the program was a "documentary."
12 Apparently, Disney's newfound position is that any uses of copyrighted works in
13 "documentaries" is a fair use—presumably, so long as the copyrights are not
14 Disney's. As explained below, this position is dead wrong.

15     15. The Estate wrote to the General Counsel of The Walt Disney Company,
16 and other legal representatives of Disney, in two further letters on March 22 and
17 March 23, 2018. Disney ignored the Estate's letters. To this day, it has never
18 bothered to respond.

19     16. Disney's fair use argument is patently absurd. Even setting aside
20 Disney's blatant hypocrisy given its notorious history regarding third party uses of
21 its own copyrights, Disney's argument here is one that would probably make even
22 the founders of Napster pause.

23     17. If Disney's position on fair use of the Estate's copyrights were
24 accepted, a network, studio or producer could make a documentary about Walt
25 Disney, and spend most of the documentary's time using, without Disney's
26 permission, extensive clips of Mickey Mouse, Walt Disney, and Disney movies.
27 Disney's music could play in the background to the narrator and the interviews.
28 Likewise, if Disney's position on fair use of the Estate's copyrights were accepted,

COMPLAINT FOR COPYRIGHT INFRINGEMENT

one could create a two-hour documentary about the *Star Wars* franchise, by summarizing each film and using extensive clips from each film while playing the iconic *Star Wars* music in the background of interviews and narration, and all without permission from Disney. We are confident that Disney would not react kindly to attempts by others to create such projects without getting permission from Disney and paying Disney for the use of its property.

18. Disney's fair use arguments are also completely inconsistent with the practice of documentary filmmakers in general. The Estate is routinely contacted by documentary filmmakers seeking to obtain licenses for Michael Jackson's works. When the Estate makes its own documentaries, it also routinely seeks and obtains licenses before using copyrighted footage (including from Disney itself, as discussed above).

19. Disney did not obtain a license for its extensive use of dozens of the Estate's copyrighted works in *The Last Days of Michael Jackson*. Disney is obviously aware of the copyright laws. Disney knows that permission from the copyright owner must be obtained before using copyright works, particularly in commercial projects like the one at issue here. Disney did not do that. Rather, it engaged in flagrant and willful infringement of the Estate's copyrights. Through this suit, the Estate seeks all appropriate redress for those violations of its rights.

## PARTIES

20. Michael Jackson is one of the most famous entertainers, songwriters and recording artists of all time. His 1982 album, *Thriller*, is the best-selling album of all time. His other original, studio albums as an adult, solo artist—*Off the Wall* (1979), *Bad* (1988), *Dangerous* (1991), *HIStory* (1995), and *Invincible* (2001)—are all classics in their own right. Each was certified platinum several times over.

21. Michael Jackson also revolutionized music videos. His 1983 video for the track, *Thriller*, is the greatest music video of all time. At one point, MTV was playing it every hour, on the hour. In 1991, the video for *Black or White* premiered

on the Fox Network, with Fox earning its single largest audience ever up to that date. Numerous other Michael Jackson music videos—*Beat It*, *Billie Jean, Bad*, *Smooth Criminal*, *Remember The Time*, *You Are Not Alone*, *Ghosts*, *Scream*, and so many others—are also classics in the genre.

22. In addition to all of this, Michael Jackson was among the greatest dancers of all time. Even today, over three decades after he first performed it while dancing to *Billie Jean* at Motown's 25th anniversary special, the "moonwalk" is probably the most well-known contemporary dance move in the world.

23. The plaintiffs are all companies that were wholly owned by the late Michael Jackson at the time of his untimely death on June 25, 2009. Today, the plaintiffs are all currently part of the corpus of real and personal properties comprising the Estate of Michael Jackson.

    a. Plaintiff MJJ Productions, Inc., is a California corporation with its principal place of business in Los Angeles County. It was founded by Michael Jackson and "loaned out" his services as a recording artist during his lifetime. It is the sole owner of substantially all sound recordings created by Michael Jackson as a solo, adult recording artist.

    b. Plaintiff Optimum Productions, Inc. ("Optimum"), is a California corporation with its principal place of business in Los Angeles County. It was founded by the late Michael Jackson and "loaned out" his services as a filmmaker during his lifetime. It holds copyright interests in films Michael Jackson owned or produced (or both). Since Michael Jackson's untimely death in 2009, Optimum has continued to produce films, including documentaries about Michael Jackson and his life, such as the critically-acclaimed Spike Lee documentaries *Bad 25* (2012) and *Michael Jackson's Journey from Motown to Off the Wall* (2016).

    c. Plaintiff New Horizons Trust III, LLC ("MIJAC"), is a Delaware limited liability company that does business under the name MIJAC Music

with its principal place of business in Los Angeles County. MIJAC Music owns copyrights in musical compositions that Michael Jackson wrote. It also owns copyrights in musical compositions created by others that Michael Jackson acquired throughout the years.

      d.    Plaintiff The Michael Jackson Company, LLC ("TMJC"), is a Delaware limited liability company founded by the late Michael Jackson with its principal place of business in Los Angeles County. It is the owner of the copyright in the film *This Is It*, along with various other copyrights associated with the film.

      e.    Plaintiff MJJ Ventures, Inc., is a California corporation founded by the late Michael Jackson with its principal place of business in Los Angeles County. It is the registrant of certain copyrighted works created in whole or in party by the late Michael Jackson.

24. When unnecessary to distinguish between the plaintiffs, they are referred to in this pleading simply as "the Estate."

25. Defendant The Walt Disney Company is a Delaware corporation with its principal place of business in Los Angeles County.

26. Defendant ABC, Inc. ("ABC") is, on information and belief, a wholly-owned subsidiary of The Walt Disney Company. On information and belief, it is a Delaware corporation with its principal place of business in Los Angeles County.

27. Defendants DOES 1 through 10, inclusive, are individuals and entities who were involved in, or were responsible in some manner for, some or all of the acts of infringement alleged herein and liable to the Estate for those infringements. The Estate will amend this complaint to state the true names and capacities of DOES 1 through 10 when their names and capacities, along with facts respecting their responsibility for the infringements, have been ascertained.

## FURTHER ALLEGATIONS

28. Michael Jackson passed away, as a result of a homicide by his "doctor," on June 25, 2009. He was just two months shy of his 51st birthday.

29. ABC aired *The Last Days of Michael Jackson* on March 24, 2018 at 8 p.m. and 7 p.m., Central Time. ABC included advertising between segments of *The Last Days of Michael Jackson* and was paid for such advertising.

30. ABC is currently making *The Last Days of Michael Jackson* available on the internet such that viewers may view the program on demand on personal computers, tablets, mobile devices, and internet enabled televisions.

31. On information and belief, ABC plans to re-air *The Last Days of Michael Jackson* on television in the future.

32. On information and belief, ABC is selling, or planning to sell, digital and physical copies of *The Last Days of Michael Jackson*.

33. On information and belief, ABC plans to license *The Last Days of Michael Jackson* to other television providers, both domestically and internationally.

34. As relevant to the production and airing of *The Last Days of Michael Jackson*, ABC was acting as an agent for The Walt Disney Company such that The Walt Disney Company is liable for ABC's copyright infringement alleged herein. On information and belief, The Walt Disney Company exercises a high degree of control over ABC; there is an extraordinarily close relationship between The Walt Disney Company and ABC; there is an overlap in the officers and directors of The Walt Disney Company and ABC; and the revenues of ABC are a part of the revenues of The Walt Disney Company generally.

35. As relevant to the production and airing of *The Last Days of Michael Jackson*, The Walt Disney Company is also liable for ABC's copyright infringement alleged herein pursuant to the doctrine of vicarious infringement. On information and belief, The Walt Disney Company has the right and ability to control ABC's content generally, and had the right and ability to control the production and airing

of *The Last Days of Michael Jackson*, specifically. On information and belief, The Walt Disney Company received a financial benefit from the production and airing of *The Last Days of Michael Jackson*.

36. As relevant to the production and airing of *The Last Days of Michael Jackson*, The Walt Disney Company is also liable for ABC's copyright infringement alleged herein pursuant to the doctrine of contributory infringement. The Walt Disney Company knew of ABC's planned infringing activity with respect to the production and airing of *The Last Days of Michael Jackson*. Its General Counsel was sent numerous letters about the subject in the days prior to airing of the program, and ignored the last two letters. On information and belief, the Walt Disney Company, owner of ABC, knew of the alleged infringing activity, and induced, caused, or materially contributed to the production and airing of *The Last Days of Michael Jackson*.

## FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT
## OF MICHAEL JACKSON'S SOUND RECORDINGS

37. MJJ Productions is the owner of federally registered copyrights in the following sound recordings:

    a. *Don't Stop 'Til You Get Enough*
    b. *Rock With You*
    c. *Human Nature*
    d. *Billie Jean*
    e. *Thriller*
    f. *Beat It*
    g. *The Girl is Mine*
    h. *Bad*
    i. *Leave Me Alone*
    j. *Childhood*

COMPLAINT FOR COPYRIGHT INFRINGEMENT

38. Defendants used these works in *The Last Days of Michael Jackson* without consent or license from MJJ Productions.

39. To the extent it may not have directly used these works, The Walt Disney Company is liable for such infringements because ABC is, for purposes of infringement here, its agent. The Walt Disney Company is also liable for such infringements pursuant to either or both the doctrines of vicarious infringement and contributory infringement.

40. As a result of Defendants' actions as described above, MJJ Productions has suffered damages and will continue to suffer damages in an amount that is presently unknown.

41. Defendants' infringement entitles MJJ Productions to recover its actual damages and Defendants' profits attributable to the infringement.

42. Defendants' infringement entitles MJJ Productions to recover statutory damages in the maximum amount permitted by 17 U.S.C. § 504.

43. Defendants' infringement was willful.

44. Defendants' infringement entitles MJJ Productions to recover its attorneys' fees pursuant to 17 U.S.C. § 505.

45. Defendants' infringement of MJJ Productions' copyrights have caused and will cause irreparable harm to MJJ Productions that cannot be fully compensated by money. Because MJJ Productions has no adequate remedy at law, MJJ Productions is entitled to appropriate injunctive relief prohibiting Defendants from further unauthorized use of MJJ Productions' copyrighted works.

**SECOND CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT OF MICHAEL JACKSON'S MUSICAL COMPOSITIONS**

46. MIJAC is the owner of federally registered copyrights in the following musical compositions:

    a. *Don't Stop 'Til You Get Enough*

    b. *Billie Jean*

   c. *Beat It*

   d. *Girl is Mine*

   e. *Bad*

   f. *Leave Me Alone*

   g. *Childhood*

47. Defendants used these works in *The Last Days of Michael Jackson* without consent or license from MIJAC.

48. To the extent it may not have directly used these works, The Walt Disney Company is liable for such infringements because ABC is, for purposes of infringement here, its agent. The Walt Disney Company is also liable for such infringements pursuant to either or both the doctrines of vicarious infringement and contributory infringement.

49. As a result of Defendants' actions as described above, MIJAC has suffered damages and will continue to suffer damages in an amount that is presently unknown.

50. Defendants' infringement entitles MIJAC to recover its actual damages and Defendants' profits attributable to the infringement.

51. Defendants' infringement entitles MIJAC to recover statutory damages in the maximum amount permitted by 17 U.S.C. § 504.

52. Defendants' infringement was willful.

53. Defendants' infringement entitles MIJAC to recover its attorneys' fees pursuant to 17 U.S.C. § 505.

54. Defendants' infringement of MIJAC copyrights have caused and will cause irreparable harm to MIJAC that cannot be fully compensated by money. Because MIJAC has no adequate remedy at law, MIJAC is entitled to appropriate injunctive relief prohibiting Defendants from further unauthorized use of MIJAC copyrighted works.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

# THIRD CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT
# OF MICHAEL JACKSON'S AUDIOVISUAL WORKS

55. Optimum is the owner of federally registered copyrights in the following works and short films (music videos), some of which are registered in the name of MJJ Ventures:

    a. *Michael Jackson's Thriller* (short film)

    b. *Billie Jean* (short film)

    c. *Bad* (short film)

    d. *Smooth Criminal* (short film)

    e. *The Way You Make Me Feel* (short film)

    f. *Dirty Diana* (short film)

    g. *Jam* (short film)

    h. *Leave Me Alone* (short film)

    i. *Black or White* (short film)

    j. *Remember the Time* (short film)

    k. *In the Closet* (short film)

    l. *Ghosts* (short film)

    m. *Scream* (short film)

    n. *Don't Stop 'Til You Get Enough* (short film)

    o. *Rock With You* (short film)

    p. *Making of Michael Jackson's "Thriller"*

    q. *Dangerous: The Short Films*

    r. *Michael Jackson: Live in Bucharest*

56. Optimum has filed an application to register the copyright in *Michael Jackson's Journey from Motown to Off the Wall* with the Copyright Office.

57. MJJ Productions is the owner of federally registered copyrights in certain concert footage from Michael Jackson's *Bad* tour, generally referred to as *Michael Jackson: Live at Wembley*.

58. MJJ Productions is the owner of federally registered copyrights in the following short films (music videos):

    a. *Beat It* (short film)

    b. *Childhood* (short film)

59. Defendants used these works in *The Last Days of Michael Jackson* without consent or license from the Estate.

60. To the extent it may not have directly used these works, The Walt Disney Company is liable for such infringements because ABC is, for purposes of infringement here, its agent. The Walt Disney Company is also liable for such infringements pursuant to either or both the doctrines of vicarious infringement and contributory infringement.

61. As a result of Defendants' actions as described above, Optimum, MJJ Productions, and MJJ Ventures have suffered damages and will continue to suffer damages in an amount that is presently unknown.

62. Defendants' infringement entitles Optimum, MJJ Productions, and MJJ Ventures to recover their actual damages and Defendants' profits attributable to the infringement.

63. Defendants' infringement entitles Optimum, MJJ Productions, and MJJ Ventures to recover statutory damages in the maximum amount permitted by 17 U.S.C. § 504.

64. Defendants' infringement was willful.

65. Defendants' infringement entitles Optimum, MJJ Productions, and MJJ Ventures to recover their attorneys' fees pursuant to 17 U.S.C. § 505.

66. Defendants' infringement of the copyrights of Optimum, MJJ Productions, and MJJ Ventures has caused and will cause irreparable harm to Optimum, MJJ Productions, and MJJ Ventures that cannot be fully compensated by money. Because Optimum, MJJ Productions, and MJJ Ventures have no adequate remedy at law, Optimum, MJJ Productions, and MJJ Ventures are entitled to

appropriate injunctive relief prohibiting Defendants from further unauthorized use of the copyrighted works of Optimum, MJJ Productions, and MJJ Ventures.

## FOURTH CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT OF MICHAEL JACKSON'S THIS IS IT AND RELATED WORKS

67. TMJC is the owner of federally registered copyright in the motion picture, *Michael Jackson's This Is It*, and in still photographs from the rehearsals that led to the motion picture.

68. Defendants used these works in *The Last Days of Michael Jackson* without consent or license from TMJC.

69. To the extent it may not have directly used these works, The Walt Disney Company is liable for such infringements because ABC is, for purposes of infringement here, its agent. The Walt Disney Company is also liable for such infringements pursuant to either or both the doctrines of vicarious infringement and contributory infringement.

70. As a result of Defendants' actions as described above, TMJC has suffered damages and will continue to suffer damages in an amount that is presently unknown.

71. Defendants' infringement entitles TMJC to recover its actual damages and Defendants' profits attributable to the infringement.

72. Defendants' infringement entitles TMJC to recover statutory damages in the maximum amount permitted by 17 U.S.C. § 504.

73. Defendants' infringement was willful.

74. Defendants' infringement entitles TMJC to recover its attorneys' fees pursuant to 17 U.S.C. § 505.

75. Defendants' infringement of TMJC's copyrights have caused and will cause irreparable harm to TMJC that cannot be fully compensated by money. Because TMJC has no adequate remedy at law, TMJC is entitled to appropriate

injunctive relief prohibiting Defendants from further unauthorized use of TMJC copyrighted works.

## PRAYER FOR RELIEF

A. For damages according to proof at trial;

B. For all profits attributable to Defendants' infringement;

C. For maximum statutory damages pursuant to 17 U.S.C. §504;

D. For attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505;

E. For prejudgment and postjudgment interest to the maximum extent permitted by law;

F. For a declaration that Defendants have infringed the Estate's copyrights, as set out above, and that such infringements were willful; and

G. For appropriate injunctive relief prohibiting Defendants from using the Estate's copyrighted works without license.

DATED: May 30, 2018          Respectfully Submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP


By:      /s/
Howard Weitzman
Attorneys for Plaintiffs MJJ Productions, Inc., Optimum Productions, Inc., New Horizons Trust III, LLC (d/b/a MIJAC Music), The Michael Jackson Company, LLC, and MJJ Ventures, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38, plaintiffs, and each of them, demand a trial by jury on all issues so triable.

DATED: May 30, 2018

Respectfully Submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP


By:     /s/
Howard Weitzman
Attorneys for Plaintiffs MJJ Productions, Inc., Optimum Productions, Inc., New Horizons Trust III, LLC (d/b/a MIJAC Music), The Michael Jackson Company, LLC, and MJJ Ventures, Inc.

10386.00001/568147